Michael MCINTYRE and Laura McIntyre, Individually and on Behalf of Their Children, K.M., L.M., C.m., M.M., and L.M., Petitioners,

v.

EL PASO INDEPENDENT SCHOOL DISTRICT, Dr. Lorenzo Garcia, and Mark Mendoza, Respondents

NO. 14–0732

Supreme Court of Texas.

Argued November 2, 2015

Opinion Delivered: June 24, 2016

Rehearing Denied October 21, 2016

Charles (Chad) E. Baruch, Johnston Tobey Baruch, P.C., Dallas TX, Steven C. James, Law Offices of Steven C. James, El Paso TX, Thomas C. Sanders, Tom Sanders, P.C., Sugar Land TX, for Petitioners Michael McIntyre and Laura McIntyre.

S. Anthony Safi, Mounce Green Myers Safi Paxson & Galatzan, P.C., El Paso TX, for Respondents El Paso ISD, Lorenzo Garcia and Mark Mendoza.

Richard L. Arnett, Brim Arnett & Robinett PC, Austin TX, for Amicus Curiae Association of Texas Professional Educators.

Holly McIntush, Lisa A. Brown, Thompson & Horton LLP, Austin TX, for Amicus Curiae Texas Association of School Boards Legal Assistance Fund.

JUSTICE DEVINE delivered the opinion of the Court, in which CHIEF JUSTICE HECHT, JUSTICE WILLETT, JUSTICE GUZMAN, JUSTICE LEHRMANN, and JUSTICE BOYD joined.

John P. Devine, Justice

The Texas Education Code permits appeals to the Texas Commissioner of Education by persons "aggrieved by" either "the school laws of this state" or "actions or decisions of any school district board of trustees that violate [ ] the school laws of this state." TEX. EDUC. CODE § 7.057(a). It does not permit, much less require, administrative appeals when a person is allegedly aggrieved by violations of laws other than the state's school laws, such as our state and federal constitutions. Yet the court of appeals expected the petitioners "to exhaust their administrative remedies" for their state constitutional claims. See 457 S.W.3d 475, 487–90 (Tex.App.–El Paso 2014). The trouble is they have none. Whether their constitutional rights were violated remains to be decided, but it is a question the courts—not the Commissioner—must decide. We accordingly reverse the court of appeals' judgment insofar as it dismissed the petitioners' claims for failure to exhaust administrative remedies. However, we affirm the court of appeals' judgment dismissing certain claims based on qualified immunity.

I

In 2007, Michael and Laura McIntyre, along with three of their children, were criminally charged with contributing to truancy and failure to attend school, respectively.[1] The McIntyres claimed the

1. The statute criminalizing the failure to attend school has since been repealed. See Act

children were exempt from Texas' compulsory attendance laws because they were homeschooled. *See* Tex. Educ. Code § 25.086(a)(1) (exempting children who attend private schools from compulsory school attendance); *Tex. Educ. Agency v. Leeper*, 893 S.W.2d 432, 443–44 (Tex.1994) (holding that bona-fide homeschools are "private schools" within the meaning of the exemption). The McIntyres had refused to sign a homeschool verification form provided by El Paso Independent School District. According to the McIntyres, the form committed them to using curriculum approved by the Texas Education Agency. The District disputes the McIntyres' interpretation.

The McIntyres assert that after the District's attendance officer filed criminal charges against them, he admitted in a phone call that they were "not breaking a law at this time." This admission, they contend, is corroborated by the criminal complaints the officer filed against them. In the space reserved for the officer to list the days of school that children have missed, the complaint instead alleged the McIntyres had "not met [the] homeschool verification requirements." The McIntyres thus assert the charges resulted from a "failure to provide documentation," not criminal conduct. The District, however, insists additional information substantiated concerns that the McIntyre children were not being educated.

The McIntyres sued the District and its attendance officer (among others), alleging they violated the McIntyres' constitutional rights by prosecuting the McIntyres for a crime they knew the McIntyres did not commit, and by using the charges to force the McIntyres to cooperate with their demands. The McIntyres alleged that their rights to due process, equal protection, and free exercise of religion under both the Texas Constitution and United States Constitution were infringed, along with their right to privacy under the Texas Constitution. The McIntyres sought various forms of relief, including declaratory and injunctive relief, as well as damages under section 1983 of Title 42 of the United States Code.

The District and its attendance officer filed pleas to the jurisdiction, special exceptions, and motions to dismiss, and the attendance officer moved for summary judgment. Among other things, the District argued the McIntyres failed to exhaust administrative remedies, and the attendance officer invoked qualified immunity. The trial court denied these pleas, exceptions, and motions, and the District and its attendance officer filed an interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(5), (8) (authorizing certain interlocutory appeals). In the court of appeals, the District urged the McIntyres must exhaust administrative remedies as for their *state-law* claims only.

The court of appeals agreed, dismissing the McIntyre's state-law claims against the District. 457 S.W.3d at 490. It also dismissed the state-law claims against the District's attendance officer based on the election-of-remedies provision in section 101.106 of the Texas Civil Practice and Remedies Code, and dismissed the federal-law claims against the attendance officer based on qualified immunity. *Id.* at 492,

of May 27, 1995, 74th Leg., R.S., ch. 260, § 1, sec. 25.094, 1995 Tex. Gen. Laws 2207, 2294 (amended 1997, 2001, 2003, 2005, 2011), *repealed by* Act of May 30, 2015, 84th Leg., R.S., ch. 935, § 41(2), 2015 Tex. Gen. Laws 3224, 3255. The statute criminalizing con-

tributing to truancy has been amended but remains in effect. *See* Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 1, sec. 25.093, 1995 Tex. Gen. Laws 2207, 2293 (amended 1997, 1999, 2001, 2003, 2011, 2015) (current version at Tex. Educ. Code § 25.093).

499. The McIntyres petitioned for review from this Court, challenging the court of appeals' judgment on qualified immunity and exhaustion of remedies.

## II

This is an interlocutory appeal with special jurisdictional considerations. The court of appeals' decision in an interlocutory appeal is generally final. TEX. GOV'T CODE § 22.225(b)(3). There are exceptions, however, such as when "one of the courts of appeals holds differently from a prior decision of another court of appeals or of the supreme court." *Id.* § 22.225(c); *see id.* § 22.001(a)(2). Courts hold differently from each other "when there is inconsistency in their respective decisions that should be clarified to remove unnecessary uncertainty in the law and unfairness to litigants." *Id.* § 22.225(e).

This is such a case. The court of appeals held the Texas Education Code required the McIntyres to appeal their state-law claims to the Commissioner of Education merely because they "involve" the school laws of Texas. *See* 457 S.W.3d at 486. Other courts of appeals have held that the Education Code's appeal provision is more limited, recognizing that the statute "has no general appeal clause for persons aggrieved by school board actions." *Jones v. Clarksville Indep. Sch. Dist.*, 46 S.W.3d 467, 474 (Tex.App.–Texarkana 2001, no pet.); *see also Austin Indep. Sch. Dist. v. Lowery*, 212 S.W.3d 827, 832 (Tex. App.–Austin 2006, pet. denied) (describing statutory changes limiting the Commissioner's jurisdiction). The Commissioner's authority over school disputes should be clarified, and we have jurisdiction.

2. In 2009, the Legislature amended the statute to add that "[a] person is not required to appeal to the commissioner before pursuing a remedy under a law outside of Title 1 or [Title

## III

■ The Legislature has granted the Texas Commissioner of Education exclusive authority to resolve certain disputes. TEX. EDUC. CODE § 7.057(a); *see Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 544–45 (Tex.2016). Where the Legislature grants the Commissioner authority to resolve a dispute, parties to such disputes must seek relief from the Commissioner through an administrative appeal before resorting to the courts. *See Clint Indep. Sch. Dist.*, 487 S.W.3d at 546. Because exhaustion is only required for "complaints that the Legislature has authorized the Commissioner to resolve," we turn first to the text of the statute. *See id.* (citing *Warren v. Sanger Indep. Sch. Dist.*, 116 Tex. 183, 288 S.W. 159, 160 (1926)).

### A

The exhaustion statute is not all-encompassing. With a few narrow exceptions not applicable here,

> a person may appeal in writing to the commissioner if the person is aggrieved by:
>
> (1) the school laws of this state; or
>
> (2) actions or decisions of any school district board of trustees that violate:
>
> (A) the school laws of this state; or
>
> (B) a provision of a written employment contract between the school district and a school district employee, if a violation causes or would cause monetary harm to the employee.

TEX. EDUC. CODE § 7.057(a); *see id.* § 7.057(e) (listing statutory exceptions).[2]

2 of the Education Code] to which Title 1 or [Title 2] makes reference or with which Title 1 or [Title 2] requires compliance." Act of May 23, 2009, 81st Leg., R.S., ch. 1111, § 1, 2009

The "school laws of this state" consist of Titles 1 and 2 of the Education Code and the administrative rules adopted under them. *Id.* § 7.057(f)(2). In short, aside from employment-contract disputes, the Education Code limits administrative appeals to cases where a person is aggrieved by Titles 1 or 2 of the Education Code or a school board's violation of them.

At times, disputes arising under other laws depend on violations of the school laws. In these disputes, the Commissioner, not a court, is required to make the initial determination that a school board violated the school laws. Such was the case in *Clint Independent School District v. Marquez*, where parents argued a school district "defie[d] the Constitution's mandates *by violating the requirements of the Education Code*." 487 S.W.3d at 547. The Court agreed the constitutional provisions were not "school laws of the state," but still required exhaustion because the constitutional claims were "ancillary to and supportive of a complaint about the board's . . . application of school law." *Id.* at 552, 552–53 (quoting *Jones*, 46 S.W.3d at 474).

 In other words, when claims are predicated on a matter within the Commissioner's exclusive jurisdiction, exhaustion is required. But if claims do not challenge the school laws themselves,[3] and neither assert nor depend on violations of the school laws or an employment contract, then exhaustion is not required.

That the Legislature fully intended these limits to administrative appeals is confirmed by the history of the exhaustion statute. When the Legislature created the office of state superintendent of public instruction in 1884, it broadly charged the superintendent with "hear[ing] and determin[ing] *all appeals* from the rulings and decisions of subordinate school officers."[4] This led the Court to hold in 1926 that "resort to the school authorities must first be made before the courts will be authorized to hear any complaint as to a matter properly belonging to the administration of the school laws." *Warren*, 288 S.W. at 160; *see Nance v. Johnson*, 84 Tex. 401, 19 S.W. 559, 559 (1892).

When the Legislature replaced the state superintendent of public instruction with the Commissioner of Education in 1949, it again created a broad administrative appeal process:

> Parties having any matter of dispute among them arising under provisions of the school laws of Texas, or any person or parties aggrieved by the actions or decisions of any Board of Trustees or Board of Education, may appeal in writ-

Tex. Gen. Laws 3054 (codified at Tex. Educ. Code § 7.057(a–1)). The parties do not address this provision.

3. We do not suggest, as the dissent contends we do, *post* at 835 (Green, J., dissenting), that a person is only aggrieved by the school laws when she raises a constitutional challenge. The school laws include both statutes and administrative regulations, Tex. Educ. Code § 7.057(f)(2), and parties may be aggrieved when other statutory provisions are violated by the school laws. For example, if a person challenges an administrative regulation, such a challenge would normally be subject to administrative appeal.

4. Act of Feb. 4, 1884, 18th Leg., 1st C.S., ch. 25, § 8, sec. 12–13, 1884 Tex. Gen. Laws 38, 41, *reprinted in* 9 H.P.N. Gammel, *The Laws of Texas 1822–1897*, at 570, 573 (Austin, Gammel Book Co. 1898) (emphasis added). The Legislature re-enacted this provision as part of its 1893 and 1905 statutory reforms to the public school system. Act of 1905, 29th Leg., R.S., ch. 124, § 25, 1905 Tex. Gen. Laws 263, 271; Act approved May 20, 1893, 23rd Leg., R.S., ch. 122, § 21, 1893 Tex. Gen. Laws 182, 187, *reprinted in* 10 H.P.N. Gammel, *The Laws of Texas 1822–1897*, at 612, 617 (Austin, Gammel Book Co. 1898).

ing to the Commissioner of Education....[5]

The Legislature similarly vested the Commissioner with extensive authority over school disputes under the Education Code, which it adopted in 1969:

Persons having any matter of dispute among them arising under the school laws of Texas or any person aggrieved by the school laws of Texas or by actions or decisions of any board of trustees or board of education may appeal in writing to the commissioner of education....[6]

That changed in 1995, when the Legislature reduced the Commissioner's authority to hear disputes.[7] As one court of appeals explained, before "1995, the commissioner had jurisdiction over appeals not only of persons aggrieved by 'the school laws of Texas,' or trustee actions, but 'any matter of dispute ... arising under the school laws of Texas.'" *Lowery*, 212 S.W.3d at 832. But since 1995, the statute no longer has a "general appeal clause for persons aggrieved by school board actions." *Jones*, 46 S.W.3d at 474.

No longer is there a "direct administrative remedy for claims that a school board took action that violated the constitutional rights (either state or federal) of the complaining party, because those are not part of the school laws of the state." *Id.* Administrative appeals are only permitted when a person is aggrieved by the school laws, a school board's violation of the

school laws, or its violation of a written employment contract. Tex. Educ. Code § 7.057(a). In all other cases, a person may resort directly to the courts.

B

The court of appeals held the McIntyres must exhaust administrative remedies because their state-law claims "involve" the school laws and no exception to exhaustion applies. 457 S.W.3d at 486–90. The McIntyres' primary response is that, as homeschoolers, they are exempt from exhaustion because the Education Code applies only to "educational institutions supported in whole or in part by state tax funds." Tex. Educ. Code § 1.001(a). Both positions overlook the text of the statute.

■ Students attending a bona-fide homeschool are not exempt from the Education Code's exhaustion requirement merely because they are exempt from Texas' compulsory attendance laws. The Education Code requires any "person"—not just public school students and their parents—to exhaust administrative remedies when they are aggrieved by the school laws or a school board's violation of them. *Id.* § 7.057(a). Simply put, whether a claimant must exhaust administrative remedies depends on the nature of the claims, not the identity of the claimant. Accordingly, the McIntyres cannot avoid exhaustion merely by identifying themselves as homeschoolers.

5. Act of May 3, 1949, 51st Leg., R.S., ch. 299, art. V, sec. 1, art. VII, sec. 1, 1949 Tex. Gen. Laws 537, 543, 545, *repealed by* Act of May 31, 1969, 61st Leg., R.S., ch. 889, § 2, 1969 Tex. Gen. Laws 2735, 3024.

6. Act of June 2, 1969, 61st Leg., R.S., ch. 889, § 1, sec. 11.13(a), 1969 Tex. Gen. Laws 2735, 2757, *repealed by* Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 58(a)(1), 1995 Tex. Gen. Laws 2207, 2498.

7. Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 1, sec. 7.057(a), 1995 Tex. Gen. Laws 2207, 2215 (codified at Tex. Educ. Code § 7.057(a)); *see Clint Indep. Sch. Dist.*, 487 S.W.3d at 550 (noting that the current statute limited the Commissioner's authority); *Larsen v. Santa Fe Indep. Sch. Dist.*, 296 S.W.3d 118, 126 n. 10 (Tex.App.–Houston [14th Dist.] 2009, pet. denied) ("The Texas Education Code was amended in 1995 to narrow the range of grievances over which the Commissioner of Education retains jurisdiction.").

Nonetheless, the mere fact that the McIntyres' claims "involve" the school laws does not mean they must exhaust administrative remedies. Rather, for administrative remedies to be available, they must be aggrieved by either (1) the school laws themselves or (2) a school board's violation of the school laws. *Id.* The McIntyres meet neither condition.

Though the McIntyres' claims relate to the Education Code, the McIntyres are not aggrieved by the school laws. The school laws make attendance at public schools compulsory but exempt certain children (such as those attending private school) from attending. TEX. EDUC. CODE §§ 25.085–.086. They also make it a crime for a "parent with criminal negligence" to "fail[ ] to require the child to attend school as required by law," and the child is absent a certain number of days. *Id.* § 25.093. Further, an attendance officer's duties under the school laws include investigating violations and enforcing school attendance by (among other things) "filing a complaint in a county, justice, or municipal court against a parent" who criminally contributes to a child's failure to attend school. *Id.* § 25.091(b).

Clearly, the McIntyres' grievance is not with the compulsory attendance law—they claim homeschoolers like them are exempt from attendance. Neither is their grievance with the attendance officer's authority to investigate or even file criminal charges against a parent who contributes to truancy. This mere grant of authority did not abridge the McIntyres' rights or otherwise aggrieve them. Instead, the McIntyres' grievance is with the District's and its attendance officer's alleged decision to file charges merely because their "homeschool verification requirements" were not met. The McIntyres claim that the District and its attendance officer unconstitutionally investigated them and filed criminal complaints against them. They do not claim to be aggrieved by the school laws.

Neither are the McIntyres aggrieved by a violation of the school laws—they claim the District violated their rights under the Texas Constitution, not the school laws. For example, they claim that the criminal charges for allegedly failing to meet the "verification requirements" deprived them of due process because it was the District's burden to prove the McIntyres did not offer a bona-fide education, not the McIntyres' burden to prove they did provide such an education. The school laws neither establish the parties' burden of proof nor place significant boundaries on what the District may do while investigating alleged truancy. It is not the school laws, but the constitution, that the McIntyres assert the District violated by charging them with a crime the District knew they did not commit.

The McIntyres' requested declarations confirm that their grievance is not with the Education Code or the District's violation of it. The McIntyres requested various declarations, including that:

- *they were innocent of the criminal charges.* This requires a determination that the *McIntyres* violated the school laws, not the *District.*
- *they could direct their children's education "free from fabricated civil/criminal charges."* This requires a determination that the District fabricated charges limiting the right to homeschool. The Education Code does not prohibit the fabrication of charges—other law does.
- *the District's prosecution policy is unlawful.* This requires a determination that the District could not prosecute the McIntyres for simply refusing to provide information about their curriculum. The Education

Code does not decide whether a person may be charged for refusing to provide evidence of innocence.

- *the District "cannot compel [Texas Education Agency] curriculum compliance."* This requires a determination that the McIntyres' privacy rights, among others, tie the District's hands. It does not depend on a violation of the Education Code.

- *the District and its attendance officer cannot "use the threat of prosecution and/or the maintenance of criminal charges to try to obtain information ... to which they are not entitled."* This requires determining that the District violated other law by coercing the McIntyres to provide information to which the Education Code did *not* entitle it.

Although these declarations may relate to the school laws, they neither challenge the school laws nor assert the District violated them. In other words, the Commissioner has no jurisdiction over the McIntyres' claims, and the McIntyres have no administrative remedies to exhaust.

### C

The dissent asserts that we construe the exhaustion statute too narrowly. According to the dissent, exhaustion is required not only when a person's "legal rights have been invaded, infringed upon, or adversely affected by the school laws themselves," but also when they have been infringed by "acts or conduct pursuant to the school laws of the state." *Post* at 835. The District and its employees investigated the McIntyres and filed charges pursuant to the school laws, so exhaustion is required, the dissent contends.

But the Legislature intended the Commissioner of Education's authority to be more limited. Employment-contract disputes aside, exhaustion is only required when a person is aggrieved by the school laws or a district's violation of them. TEX. EDUC. CODE § 7.057(a). To this clear Legislative mandate, the dissent would add its own, requiring exhaustion not only for grievances with the school laws or actions *violating* them, but also for actions taken *pursuant* to them. If the Legislature meant this, it would have said it.

The dissent urges that plaintiffs cannot creatively plead around exhaustion by guising claims truly subject to the Commissioner's review as constitutional claims. True, but neither may school districts avoid the courts by conflating all grievances with their actions as grievances with the school laws themselves. Yet this is what the dissent's approach would allow, mandating exhaustion for the McIntyres and countless other parents or students aggrieved not by the school laws but by a school district's actions.

Consider, for example, if a student alleged that school security personnel unreasonably searched her. *See Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 370, 129 S.Ct. 2633, 174 L.Ed.2d 354 (2009) (confirming that the Fourth Amendment applies in school settings). Though the Education Code authorizes school districts to commission peace officers to protect students' safety, TEX. EDUC. CODE § 37.081(a), (d), the student would be aggrieved by the officer's actions, not by the school laws.

Or perhaps a school district suppressed student speech and engaged in viewpoint discrimination. The Education Code broadly empowers school officials to maintain law and order, *id.* §§ 37.001–.313, but the First Amendment prohibits them from silencing viewpoints that do not materially and substantially interfere with maintaining order at school, *Tinker v. Des Moines Indep. Sch. Dist.*, 393 U.S. 503, 512–13, 89

S.Ct. 733, 21 L.Ed.2d 731 (1969). The student would be aggrieved by the school district's violation of the First Amendment, not by the Education Code's authorization to maintain order.

So it is here. The McIntyres' grievance is not with the school laws, but with the District's alleged violation of their constitutional rights. Exhaustion is not required.

The dissent also argues the McIntyres must exhaust administrative remedies because their claims implicitly allege a violation of the school laws. The dissent asserts the McIntyres allege the District and its attendance officer acted outside the scope of their authority, which is a violation of the school laws. But the McIntyres assert that the Texas Constitution, not the school laws, limited their authority and prohibited their actions. The McIntyres' claims are not predicated on a violation of the school laws, and their constitutional claims may be reached without deciding whether the District violated the school laws.

Indeed, what if a school board required school attendance officers—acting "pursuant to" their investigatory duties under the school laws—to take actions violating a parent's Fourth Amendment right against unreasonable searches and seizures? The parent's claim that the school board exceeded its authority would not assert a violation of the school laws, but a violation of the United States Constitution. Exhaustion would not be required. The same holds true for the McIntyres.

8. *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 814 (5th Cir.2010) (citing *Albright v. Oliver*, 510 U.S. 266, 270–71, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality op.)); *see also Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir.2003) (en banc) ("[W]e conclude that no such freestanding constitutional right to be free from malicious prosecution exists.").

## IV

The McIntyres made several claims against the District's attendance officer under section 1983 of Title 42 of the United States Code, but the court of appeals held qualified immunity shielded him from personal liability. *See* 457 S.W.3d at 496–99. Here, the McIntyres challenge only the officer's "entitlement to qualified immunity on the substantive due process claim," arguing he violated their clearly established rights under the Fourteenth Amendment by "swear[ing] under oath to the commission of a crime" he knew they did not commit.

Under the doctrine of qualified immunity, "courts may not award damages against a government official in his personal capacity unless 'the official violated a statutory or constitutional right,' and 'the right was "clearly established" at the time of the challenged conduct.'" *Lane v. Franks*, —— U.S. ——, 134 S.Ct. 2369, 2381, 189 L.Ed.2d 312 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)). Given the Fifth Circuit's repeated holdings that there is "no Fourteenth Amendment 'liberty interest' or substantive due process right to be free from criminal prosecution unsupported by probable cause,"[8] the McIntyres cannot assert the attendance officer violated a clearly established federal right. Qualified immunity shields the officer from the McIntyres' section 1983 claim.

* * *

The Legislature has not crafted administrative remedies for the McIntyres' claims.

*But cf. Cole v. Carson*, 802 F.3d 752, 773 (5th Cir.2015) ("Where police intentionally fabricate evidence and successfully get someone falsely charged with a felony as cover for their colleagues' actions, and the Fourth Amendment is unavailing, there may be a due process violation.").

Accordingly, the court of appeals' judgment is reversed insofar as it dismissed plaintiffs' claims for failure to exhaust administrative remedies. We affirm the court of appeals' judgment to the extent it dismissed plaintiffs' claims based on qualified immunity. We remand the case to the court of appeals for consideration of the parties' remaining jurisdictional arguments.

JUSTICE GREEN filed a dissenting opinion, in which JUSTICE JOHNSON and JUSTICE BROWN joined.

JUSTICE GREEN, joined by JUSTICE JOHNSON and JUSTICE BROWN, dissenting.

This case presents one issue: Can courts interfere in disputes about a school district's authority under the Texas Education Code to request information about homeschool parents providing their children an education that meets the standard established in *Texas Education Agency v. Leeper*, 893 S.W.2d 432, 443–44 (Tex.1994), without the Commissioner of Education first having an opportunity to resolve such disputes? Texas Education Code section 7.057 requires that persons aggrieved by the school laws of the state or a school board's violations of the school laws of the state exhaust administrative remedies. TEX. EDUC. CODE § 7.057. Yet the Court today ignores our rules of statutory construction and holds that homeschool parents can avoid that exhaustion requirement simply by cloaking their school-law claims in constitutional language. By allowing parties to plead creatively around exhaustion requirements, the Court undercuts the Legislature's clear language and interprets section 7.057(a)(1) in a way that renders it meaningless and unenforceable.

This case could and should have been handled through the school district's administrative process before proceeding to court.

Under Texas law, all school-aged children must attend public school unless they are enrolled in a "private or parochial school that includes in its course a study of good citizenship" or are otherwise exempted. *Id.* §§ 25.085(a), .086(a)(1). In our decision in *Leeper*, we held that section 25.086(a)(1)'s exemption encompassed homeschooled children being taught in a bona fide manner from a curriculum designed to meet basic education goals of "reading, spelling, grammar, mathematics and a study of good citizenship." 893 S.W.2d at 439, 443–44. In this interlocutory appeal, the parents of homeschooled children petition this Court for review, arguing that the court of appeals erred in holding that they were required to exhaust administrative remedies before bringing suit and that the school officials sued were entitled to qualified immunity. 457 S.W.3d 475 (Tex.App.–El Paso 2014, pet. granted). I would hold that the trial court lacked subject matter jurisdiction to hear the case because the McIntyres failed to exhaust administrative remedies before filing suit. Because the Court holds otherwise, I respectfully dissent.

## I. Facts and Procedural History

Michael and Laura McIntyre (the McIntyres) decided to homeschool their nine children for religious and financial reasons.[1] Beginning in January 2005, the McIntyres taught their children in some empty rooms at a motorcycle dealership co-owned by the McIntyres and Tracy McIntyre, Michael's brother. However, in August 2005, because of a dispute between

---

1. Before December 2004, the McIntyre children had been students at Immanuel Baptist

Christian School in El Paso.

Tracy and the McIntyres, the McIntyres moved their homeschool to a rental house they owned.

In January 2006, El Paso Independent School District (EPISD) received an anonymous call informing EPISD that children were at the McIntyres' residence all day. EPISD's Office of Pupil Services sent a truant officer to check on the McIntyres' home and the rental house in early February 2006. It is unclear who spoke with the truant officer during the home visit. The officer testified in his deposition that he spoke with two young men at the home, who could not tell him anything about the McIntyres' homeschool, and that he told the men to tell the McIntyres to call Pupil Services. The officer's testimony is corroborated by the residence check form he filled out after the visit. Michael testified that he spoke with the officer and told the officer that he was homeschooling his children, which the officer reportedly assured him was legal, but the officer requested that Michael call Pupil Services and inform them. In her affidavit, Laura stated that she called Pupil Services and left a message, informing them that she and her husband were homeschooling their children.[2]

After the February 2006 visit, EPISD did not try to contact the McIntyres again until December. In the intervening months, Tori McIntyre, the McIntyres' eldest daughter, ran away from home and went to live with her aunt and uncle, Kathryn and Maby McIntyre, because she wanted to attend school. Kathryn enrolled Tori in Coronado High School. Even though Tori was seventeen, she was placed in ninth grade because she could not account for her education while she was being homeschooled by her parents.[3] As a result, in November 2006, Gene and Shirene McIntyre, Tori's grandparents and Michael's parents, went to Pupil Services and spoke with the Director of Pupil Services, Mark Mendoza,[4] about their concern for their other grandchildren's education.

In December 2006, Mendoza sent the truant officer to verify that children were living at the McIntyre residence. After he verified that children lived at the address and that Tori had been placed in ninth grade, Mendoza's secretary contacted a counselor from the middle school and asked her to go to the McIntyre residence. The counselor visited the house and asked the McIntyres to submit a curriculum to EPISD. When the McIntyres refused to submit the curriculum, Mendoza's secretary contacted a counselor at the elementary school and asked her to go to the McIntyre residence and have them sign a homeschool verification form. The counselor took the form to the house and asked the McIntyres to sign the form. The McIntyres refused, handed the counselor a telephone, and told her to speak to their attorney.[5]

After that home visit, the McIntyres' attorney[6] wrote a letter to the counselor

---

2. Laura received a message back, requesting an informal, optional form for EPISD's files, but the McIntyres never sent in a form.

3. Tori also refused to take any placement exams that could have put her into a higher grade because she was afraid that she would fail.

4. Mark Mendoza became Director of Pupil Services in July 2006, several months after EPISD's first visit with the McIntyres.

5. The McIntyres were provided an attorney by the Home School Legal Defense Association (HSLDA), an organization they were members of. The HSLDA attorney asked the counselor to fax the homeschool verification form to him, which she did.

6. It is undisputed that the McIntyres' HSLDA attorney at the time, Christopher Klicka, while licensed to practice law in Virginia, was not licensed to practice law in Texas.

informing her that the McIntyres were educating their children in a bona fide manner and would not provide any other information to EPISD. Because the McIntyres refused to sign the homeschool verification form, Mendoza sent the McIntyres a Notice of Absences for each of the children and requested that the McIntyres meet with him or another attendance officer to avoid prosecution. In response, the McIntyres' attorney sent another letter again stating that the McIntyres would not provide any more information to EPISD.

In February and March 2007, EPISD filed individual criminal complaints against the McIntyres and three of their children for contributing to truancy and failure to attend school, respectively. Laura called Mendoza to ask about the complaints. Mendoza asked her to meet with him to discuss the complaints, but the McIntyres never met with Mendoza. Matt Moore, the district attorney assigned to the case, sent the McIntyres a letter in September 2007, offering to dismiss the case if they would sign the bottom of his letter, stating that they were using a curriculum that met the basic educational goals of reading, writing, spelling, math, and a study of good citizenship. The McIntyres refused. Nevertheless, Moore moved to dismiss the complaints against the McIntyre children in October 2007 and against the McIntyres in November 2007.[7]

On July 12, 2007, the McIntyres filed a petition for declaratory judgment with the 168th District Court against Tracy, the grandparents, EPISD, Mendoza, and other EPISD employees (collectively, the defendants). The McIntyres alleged that the

defendants violated state and federal law and their rights under the Texas and United States Constitutions and the Texas Religious Freedom Restoration Act (TRFRA).[8] EPISD, Mendoza, and the other EPISD employees (collectively, the District defendants) filed a motion to dismiss and plea to the jurisdiction, arguing that because the McIntyres failed to exhaust administrative remedies, they could not bring suit against the District defendants. The trial court denied the District defendants' plea, and they appealed.

At the court of appeals, the District defendants argued, among other things, that the trial court erred in denying their plea to the jurisdiction because the McIntyres failed to exhaust administrative remedies and the EPISD employees were entitled to qualified immunity. The court of appeals held that the EPISD employees were entitled to qualified immunity and that the state law claims against the District defendants should be dismissed because the McIntyres failed to exhaust administrative remedies before filing suit against the District defendants. 457 S.W.3d at 499.

## II. Exhaustion of Administrative Remedies

When an agency has exclusive jurisdiction over a dispute, the aggrieved party must exhaust administrative remedies before seeking redress in court. Cash Am. Int'l Inc. v. Bennett, 35 S.W.3d 12, 15 (Tex.2000). "When the Legislature grants an administrative agency sole authority to make an initial determination in a dispute,

---

7. Moore moved to dismiss against the children because he felt that their parents were the parties responsible for keeping the children out of school. Moore later moved to dismiss against the McIntyres because Tori would not testify against her parents and be-

cause he was told by the grandparents' attorney that the McIntyres had a curriculum.

8. The McIntyres have conceded that their TRFRA claims are barred by statute because they failed to provide pre-suit notice to EPISD or its employees.

832

agency jurisdiction is exclusive." *City of Hous. v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013) (per curiam). The trial court does not have subject matter jurisdiction over a case that is within an agency's exclusive jurisdiction until the aggrieved party has exhausted administrative remedies. *Id.* As a result, the trial court must dismiss a case within an agency's exclusive jurisdiction if the aggrieved party has failed to exhaust administrative remedies. *Id.*

With some exceptions, under section 7.057(a) of the Texas Education Code, the Commissioner of Education has the power to hear appeals from persons aggrieved by:

(1) the school laws of this state; or

(2) actions or decisions of any school district board of trustees that violate:

(A) the school laws of this state; or

(B) a provision of a written employment contract between the school district and a school district employee, if a violation causes or would cause monetary harm to the employee.

TEX. EDUC. CODE § 7.057(a). Accordingly, Texas courts have long held that a person aggrieved by the school laws of the state must exhaust administrative remedies before filing suit. *E.g., Warren v. Sanger Indep. Sch. Dist.*, 116 Tex. 183, 288 S.W. 159, 160 (1926) ("It has been uniformly held that the resort to the school authorities must first be made before the courts will be authorized to hear any complaint as to a matter properly belonging to the administration of the school laws. It is a condition precedent to the exercise of the jurisdiction of the civil courts."); *Ollie v. Plano Indep. Sch. Dist.*, 383 S.W.3d 783, 792 (Tex.App.–Dallas 2012, pet. denied); *Gutierrez v. Laredo Indep. Sch. Dist.*, 139 S.W.3d 363, 366 (Tex.App.–San Antonio 2004, no pet.); *Jones v. Clarksville Indep. Sch. Dist.*, 46 S.W.3d 467, 471 (Tex.App.– Texarkana 2001, no pet.); *Jackson v.*

*Hous. Indep. Sch. Dist.*, 994 S.W.2d 396, 401 (Tex.App.–Houston [14th Dist.] 1999, no pet.); *Chastain v. Mauldin*, 32 S.W.2d 235, 237 (Tex.Civ.App.–Austin 1930, no writ). "It is a well-established rule that in all matters pertaining to the administration of school laws involving questions of fact ... resort must first be had to the school authorities and the method of appeal there provided for exhausted before the courts will entertain jurisdiction." *Mission Indep. Sch. Dist. v. Diserens*, 144 Tex. 107, 188 S.W.2d 568, 570 (1945) (quoting *State ex rel. Nevills v. Sanderson*, 88 S.W.2d 1069, 1070 (Tex.Civ.App.–Waco 1935, no writ)). The purpose of the exhaustion requirement is not to deprive a party of legal rights, but to provide a procedure through which the party can enforce its rights. *Rhule*, 417 S.W.3d at 442.

EPISD maintains a policy for resolution of complaints by the public. Under the policy, EPISD provides three levels of administrative review that the complainant must take advantage of to resolve any disputes. The policy provides:

LEVEL ONE An individual who has a complaint or concern shall request a conference with the appropriate administrator within 15 days of the event or action that is the subject of the complaint. The administrator shall hold a conference with the individual within seven days of the request. The administrator shall have seven days following the conference within which to respond in writing to the complainant.

LEVEL TWO If the outcome of the conference with the administrator is not to the complainant's satisfaction or the time for a response has expired, the complainant may request a conference with the superintendent or designee. The request must be filed within seven days following receipt of a response or,

if no response is received, within seven days of the response deadline. The superintendent or designee shall hold the conference within seven days after receiving the request.

Prior to or at the time of the conference the complainant shall submit a written complaint that includes his or her signed statement of the complaint, any evidence in its support, the solution sought, and the date of the conference with the administrator. The superintendent or designee shall have seven days following the conference within which to respond in writing to the complainant. LEVEL THREE If the outcome of a conference with the superintendent or designee is not to the complainant's satisfaction or if the time for a response has expired, the complainant may submit to the superintendent or designee a request to place the matter on the agenda of a future Board meeting. The request shall be in writing and must be filed within seven days of the response or, if no response is received, within seven days of the response deadline.

The superintendent shall inform the complainant of the date, time, and place of the meeting in writing.

The McIntyres argue that they are exempted from the exhaustion of administrative remedies requirement because the requirement does not apply to them as a private homeschool. They assert that because section 7.057(f)(2) defines "school laws of the state" to mean Titles 1 and 2 of the Education Code and all rules adopted thereunder, they are exempted because Titles 1 and 2 govern only public schools, not private schools. *See* TEX. EDUC. CODE §§ 1.001(a), 7.057(f)(2). Under their con-

struction of the exhaustion requirement, only public school students and parents are required to exhaust administrative remedies prior to filing suit against the school district and its employees. While the McIntyres are correct that Titles 1 and 2 govern only public schools, they incorrectly conclude that they are therefore exempt from the exhaustion requirement because their children do not attend public school. The attendance requirements and applicability of exemptions from those requirements are squarely within Title 2 of the Education Code. *See id.* §§ 25.085, .086(a)(1). Simply because homeschools are exempt from the compulsory attendance requirement does not mean that they are also exempt from section 7.057(a)'s exhaustion of administrative remedies requirement when they have a grievance with the school district's application of the attendance laws. *See id.* § 7.057(a).

Section 7.057(a), found in Title 2 of the Education Code, provides an appeal for any person aggrieved by the school laws of the state or an action by a public school board that violates the school laws of the state. *Id.* This section does not limit appeals to school district employees and public school parents and students. The section, for example, does not preclude a construction contractor from appealing to the Commissioner based on a school board decision that violates the school laws of the state. Under the McIntyres' interpretation, the contractor would not be required to exhaust administrative remedies on a dispute that arises from a school board's unlawful action because the contractor is not governed by Titles 1 and 2 of the Education Code. Section 7.057(a) and its predecessors have never been interpreted in this way.[9] The McIntyres,

9. While this Court has held that various vendors were not required to exhaust administrative remedies because their claims did not

allege a violation of Texas school laws, we have never held that they were not required to exhaust administrative remedies because of

regardless of their status as parents of homeschooled children, are required to exhaust administrative remedies if they are aggrieved by the school laws of the state or a school board's violations of the school laws of the state. *Id.*

The Court suggests that the McIntyres are not aggrieved by the school laws of the state because they do not allege that any of the school laws are unconstitutional. 499 S.W.3d at 825. Under this interpretation of section 7.057(a)(1), an aggrieved party must appeal to the Commissioner of Education whenever the party challenges a school law as unconstitutional. The Commissioner of Education, however, does not have authority to decide whether a law is unconstitutional. *See Edwards Aquifer Auth. v. Day,* 369 S.W.3d 814, 844 (Tex. 2012) (citing *Cent. Power & Light Co. v. Sharp,* 960 S.W.2d 617, 618 (Tex.1997) (per curiam)) (holding that agencies lack the authority to decide whether a statute is constitutional). Requiring that plaintiffs mount a constitutional challenge to the school laws for section 7.057(a)(1)'s exhaustion requirement to apply renders that section of the law meaningless and unenforceable, a result we cannot reach. *See Crosstex Energy Servs., L.P. v. Pro Plus, Inc.,* 430 S.W.3d 384, 390 (Tex.2014) ("We must not interpret the statute in a manner that renders any part of the statute meaningless or superfluous."); *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue,* 271 S.W.3d 238, 256 (Tex.2008) ("The Court must not interpret the statute in a manner that renders any part of the statute meaningless or superfluous."); *Spence v. Fen-*

*chler,* 107 Tex. 443, 180 S.W. 597, 601 (1915) ("It is an elementary rule of construction that ... effect must be given to every sentence, clause, and word of a statute so that no part thereof be rendered superfluous or inoperative."). Contrary to the Court's assertion, I am not concerned that the Court "construe[s] the exhaustion statute too narrowly." 499 S.W.3d at 827. I am concerned that the Court does away with part of the exhaustion statute altogether.

"In construing statutes, we ascertain and give effect to the Legislature's intent as expressed by the language of the statute." *City of Rockwall v. Hughes,* 246 S.W.3d 621, 625 (Tex.2008). We presume that the Legislature "deliberately and purposefully selects words and phrases it enacts, as well as deliberately and purposefully omits words and phrases it does not enact." *Tex. Mut. Ins. Co. v. Ruttiger,* 381 S.W.3d 430, 452 (Tex.2012). Therefore, we construe the language of the statute according to its plain and common meaning unless such a construction leads to an "absurd or nonsensical" result. *Ross v. St. Luke's Episcopal Hosp.,* 462 S.W.3d 496, 501 (Tex.2015). To determine a word's common and ordinary meaning, "we look to a wide variety of sources, including dictionary definitions." *Jaster v. Comet II Constr., Inc.,* 438 S.W.3d 556, 563 (Tex. 2014).

Under section 7.057(a)(1), persons "aggrieved by ... the school laws of this state" must exhaust their administrative remedies before bringing suit in district court. TEX. EDUC. CODE § 7.057(a)(1); *see*

---

their status as vendors. *See, e.g., Fort Worth Indep. Sch. Dist. v. Serv. Emp't Redevelopment,* 243 S.W.3d 609, 610 (Tex.2007) (per curiam) (holding that "a vendor's claim for breach of a contract to provide a school district services ... does not complain of a violation of Texas school laws"); *Columbus Indep. Sch. Dist. v. Five Oaks Achievement Ctr.,* 197 S.W.3d 384,

385 (Tex.2006) (per curiam) (same); *Spring Branch Indep. Sch. Dist. v. Metalab Equip. Co.,* 381 S.W.2d 48, 48 (Tex.1964) (per curiam) (holding that a claim for breach of a contract to buy laboratory equipment was not "a matter properly belonging to the administration of school laws").

*Warren*, 288 S.W. at 160 ("[R]esort to the school authorities must first be made before the courts will be authorized to hear any complaint as to a matter properly belonging to the administration of the school laws."). According to Webster's International Dictionary, to "aggrieve" means "to inflict injury upon," and "by" means "through the means or instrumentality of." *Aggrieve, By*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 41, 307 (2002). Therefore, persons "aggrieved by" the school laws of the state refers to persons injured through the means or instrumentality of Education Code Titles 1 and 2 and the rules adopted thereunder.

Over one hundred years ago, this Court recognized the prevalence of the term "aggrieved" in statutes. *Peavy v. Goss*, 90 Tex. 89, 37 S.W. 317, 319 (1896). The Court noted in *Peavy* that "aggrieved by" a court judgment had "usually been construed to mean any person having an interest recognized by law in the subject-matter of the judgment which he considers injuriously affected by the action of the court." *Id.* Defining "aggrieved by," the Court stated: "In a legal sense, a person is aggrieved by an act when a legal right is invaded by the act complained of." *Id.* (holding that a parent was aggrieved when her "legal right to keep [her child] away from temptation" was infringed by a liquor vendor's violation of state law prohibiting the sale of liquor to minors). In a similar case, the Court later reiterated that a person is "aggrieved" when that person is "injured in her rights by such conduct" complained of. *Ellis v. Brooks*, 101 Tex. 591, 102 S.W. 94, 96 (1907). In the more than one hundred years since, courts of appeals have been applying a similar definition of "aggrieved by." *See, e.g., Ins. Co. of Pa. v. Orosco*, 170 S.W.3d 129, 132–33 (Tex.App.–San Antonio 2005, no pet.) ("[A]n aggrieved party is commonly defined as one who has suffered a loss or

injury." (citing BLACK'S LAW DICTIONARY 60 (5th ed.1979)); *Cty. of El Paso v. Ortega*, 847 S.W.2d 436, 442 (Tex.App.–El Paso 1993, no writ) ("An aggrieved party is one who has an interest recognized by law which is injuriously affected by the trial court's judgment."); *City of Hous. v. Pub. Util. Comm'n of Tex.*, 618 S.W.2d 428, 431 (Tex.App.–Austin 1981, writ ref'd n.r.e.) ("The term 'aggrieved' refers to a substantial grievance, a denial of some personal or property right or the imposition of a burden or obligation upon a party."). More recently, in *Hooks v. Texas Department of Water Resources*, we determined that "[t]he terms 'aggrieved' and 'affected' are synonymous." 611 S.W.2d 417, 419 (Tex. 1981) (holding that riparian landowners had standing to bring an action in district court challenging the Department of Water Resources's proposed location of a sewage treatment plant).

While most of this Court's analysis of "aggrieved by" has focused on when a party may appeal to district court, the core principle applies in this context as well—a person is aggrieved when his or her legal rights are invaded, infringed upon, or adversely affected by the act or conduct complained of. When the statute requires exhaustion of administrative remedies for a person "aggrieved by . . . the school laws of this state," the exhaustion requirement applies when the person alleges that his or her legal rights have been invaded, infringed upon, or adversely affected by the school laws themselves or acts or conduct pursuant to the school laws of the state.

When reviewing jurisdictional questions, such as whether a party must exhaust administrative remedies, we review the pleadings as a whole, looking to the pleader's intent, and construe them liberally in favor of the plaintiffs. *City of Hous. v. Williams*, 353 S.W.3d 128, 141 (Tex.2011). The Court's reasoning today allows the

McIntyres to plead around the exhaustion requirement by simply alleging constitutional claims. As we recently held in *Clint Independent School District v. Marquez* (*Clint ISD*), however, "[t]he nature of the claims, rather than the nomenclature, controls, and artful pleadings cannot circumvent statutory jurisdictional prerequisites." 487 S.W.3d 538, 547 (Tex.2016). "Creative pleading does not change the nature of a claim." *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 386 (Tex.2016). The McIntyres' allegation of constitutional grievances should not allow them to circumvent the true nature of their claims—a grievance with EPISD and its authority under the school laws—and the Legislature's clear intent that such claims be resolved first through the administrative process.[10]

We review the pleadings in light of the statutes in effect at the time of injury. *Rhule*, 417 S.W.3d at 442. To determine whether the McIntyres are aggrieved by the school laws of the state, we review their petitions and other pleadings filed in the trial court. While the McIntyres do not expressly allege violations of the Edu-

cation Code in their most recent amended petition, they are clearly seeking relief from actions taken by EPISD and Mendoza under the direct authority of the Education Code, and they challenge that authority. *See Clint ISD*, 487 S.W.3d at 559 (holding that even though the plaintiffs alleged only constitutional violations, their petition as a whole reflected that the true nature of their complaint was one for violations of the Education Code).

Under Education Code section 11.002, school districts have the primary responsibility for ensuring that students comply with the Education Code, including section 25.085(a)'s compulsory attendance requirement. TEX. EDUC. CODE §§ 11.002, 25.085(a). The McIntyres claim that, under *Leeper*'s interpretation of Education Code provisions, they are exempt from section 25.085(a)'s requirement that all children attend school because they are homeschooling their children. Their most recent petition, therefore, asks the trial court to declare that they are innocent of all charges filed against them by EPISD. In their second amended petition, the McIntyres even asked for "a declaration

---

**10.** The Court and the McIntyres seem to think that requiring the McIntyres to exhaust their administrative remedies would prejudice or burden them. However, we have stated multiple times, and most recently in *Clint ISD*, that the exhaustion requirement "does not deprive parties of their legal rights." *Clint ISD*, 487 S.W.3d at 544; *accord Rhule*, 417 S.W.3d at 442; *see* TEX. EDUC. CODE § 7.057(b) ("This section does not deprive any party of any legal remedy."). Administrative remedies are meant to keep educational disputes out of courts when possible and provide an "orderly procedure" to enforce a party's rights. *Rhule*, 417 S.W.3d at 442. In fact, if a party is not satisfied with the outcome of the administrative process, the party "may file suit and have the courts review the agency's decision." *Clint ISD*, 487 S.W.3d at 544. Requiring the McIntyres to exhaust their administrative remedies, therefore, would not deprive them of access to the courts, but simply re-

quire them to seek relief from the school district and the Commissioner first. If the school district and Commissioner do not provide them with their requested relief, the McIntyres could then bring their claims to the district court. Of course, if the McIntyres would suffer irreparable harm by exhausting administrative remedies, they could bring their case directly to the court. *See Hous. Fed'n of Teachers, Local 2415 v. Hous. Indep. Sch. Dist.*, 730 S.W.2d 644, 646 (Tex.1987) ("Parties are not required to pursue the administrative process regardless of the price. If irreparable harm will be suffered and if the agency is unable to provide relief, the courts may properly exercise their jurisdiction in order to provide an adequate remedy."). The McIntyres do not allege irreparable harm, however, and nothing in this record suggests that pursuing administrative remedies would cause them irreparable harm.

that they were, and are, in compliance with the Texas Education Code sections under which they were charged and prosecuted."[11]

The Court is simply wrong in saying that the McIntyres allege only violations of their rights under the Texas Constitution. 499 S.W.3d at 826. In every version of their petition, the McIntyres have asserted that they "have fully complied with Texas law regarding the education of their children in their private school" and that "[t]he Defendant's actions have undermined those rights which were clearly established in the Leeper decision." In Leeper, we interpreted the predecessor to section 25.086(a) to include homeschools in the definition of private schools exempted from section 25.085(a)'s compulsory attendance requirement. 893 S.W.2d at 443–44. The McIntyres claim that EPISD violated their rights as established by Leeper, but Leeper only interpreted rights under the Education Code; it did not establish that parents have a right to homeschool under the Texas or United States Constitutions. See id. at 446 ("[W]e do not reach [the parents'] constitutional arguments under § 1983. The [TEA's resolution] acknowledged that home schooling may involve constitutional claims of religious freedom. Our decision today need not, and does not, address such claims."). Therefore, for the trial court to find that EPISD undermined the McIntyres' rights to homeschool their children as established by Leeper, it would have to find that the McIntyres' rights under the Education Code, not under the Texas or United States Constitutions, were violated. Under the Court's opinion, whenever a student or parent challenges a school district's use of its authority under the Education Code to determine whether a student or parent is in compliance with Leeper, the dispute may go straight to court, instead of first allowing the school board and Commissioner the opportunity to resolve such disputes consistently and without court interference. By failing to recognize that the McIntyres allege their claims under their rights pursuant to Leeper, and thus pursuant to the Education Code, the Court effectively writes Leeper out of the school laws.

Furthermore, to declare that the McIntyres are innocent of all claims, the trial court would have to find that the McIntyres qualify for the exemption provided in Education Code section 25.086(a)(1). See TEX. EDUC. CODE § 25.086(a)(1) (exempting attendees of a private or parochial school from the compulsory attendance requirement). Whether the exemption applies in this case is necessarily a fact question, which, at this stage, is best resolved by the school board or Commissioner rather than the court. See Mission Indep. Sch. Dist., 188 S.W.2d at 570 ("It is a well-established rule that in all matters pertaining to the administration of school laws involving questions of fact ... resort must first be had to the school authorities ... before the courts will entertain jurisdiction of a complaint with reference to such matters." (quoting Sanderson, 88 S.W.2d at 1070)).

The McIntyres also seek a declaration from the trial court that Mendoza acted outside of his authority as an attendance officer and therefore violated the law. An attendance officer's powers and duties are outlined in Texas Education Code section 25.091. Specifically, under the version of

---

11. Of course, the most recently amended petition is the live pleading, see TEX. R. CIV. P. 65, but I reference an earlier version of the McIntyres' petition because it is instructive as to the nature and evolution of their claims. See Williams, 353 S.W.3d at 141 (viewing the pleadings as a whole to ascertain the pleader's intent).

the statute in effect at the time of the allegedly unauthorized conduct, Mendoza had the authority to:

investigate each case of a violation of the compulsory school attendance requirements referred to [him]; ... enforce compulsory school attendance requirements by: ... referring a student to a juvenile court or filing a complaint against a student in a county, justice, or municipal court if the student has unexcused absences ... under Section 25.094 ... and ... filing a complaint in a ... court against a parent who violates Section 25.093; ... [and] to make a home visit or otherwise contact the parent of a student who is in violation of compulsory school attendance requirements....

Act of May 16, 2003, 78th Leg., R.S., ch. 137, § 3, sec. 25.091(b), 2003 Tex. Gen. Laws 186, 187–88 (amended 2015) (current version at TEX. EDUC. CODE § 25.091(b)). Additionally, under Education Code sections 25.091 and 25.0951(a), a school district, or attendance officer acting on behalf of the school district, shall refer a student to a truancy court if the student fails to attend school for a requisite number of days without excuse. *Id.* §§ 25.091, .0951(a). The version of the statute in effect when the complaints were filed against the McIntyres outlined the procedure for filing a complaint against a student or parent allegedly in violation of section 25.094 or 25.093, respectively. Act of May 30, 2005, 79th Leg., R.S., ch. 949, § 37, sec. 25.0951, 2005 Tex. Gen. Laws 3198, 3211–12 (amended 2015) (current version at TEX. EDUC. CODE § 25.0951(a)). The statute set out two procedures, one for when the student missed ten or more days within a six-month period, and/or one for

three or more missed days within a four-week period. *Id.* The Court points out that the McIntyres challenge the complaints filed by EPISD against them, which alleged that the McIntyres violated sections 25.093 and 25.094 because they had "not met Homeschool verification requirement." [12] 499 S.W.3d at 822. The McIntyres argue that the complaints are based on a nonexistent crime because in the section of the complaint form for listing days the student has allegedly missed, the District defendants wrote "Has not met Homeschool verification requirement." Taking the McIntyres' allegations as true and viewing their pleadings in the light most favorable to their claims, *see Williams,* 353 S.W.3d at 141, Mendoza would thus have acted outside the scope of his authority under section 25.091 of the Education Code by filing a complaint that failed to comply with section 25.0951. The McIntyres' requested declaration therefore relies on a determination of whether Mendoza exceeded his authority under the Education Code.

Furthermore, the McIntyres challenge the lawfulness of EPISD's mandatory prosecution policy. With this requested declaration, the McIntyres necessarily allege that EPISD's policy violates section 25.0951's grant of authority to file a complaint. *See* TEX. EDUC. CODE § 25.0951. EPISD and other school districts do not have authority to "prosecute" students and parents for violating attendance requirements outside of section 25.0951's grant of authority to file a complaint in the appropriate court. *Id.* The Court notes that this declaration would require a determination that EPISD could not prosecute the McIntyres merely because they refused to provide information about their curriculum.

12. While this case was pending before this Court, the Legislature repealed section 25.094 and amended relevant sections of the Education Code and Family Code to decriminal-

ize truant conduct by students. Act of May 30, 2015, 84th Leg., R.S., ch. 935, § 41(2), sec. 25.094, 2015 Tex. Sess. Law Serv. Ch. 935.

499 S.W.3d at 826–27. The Court is correct that the McIntyres' declaration would require the trial court to determine whether EPISD could prosecute the McIntyres for refusing to provide curriculum information, but fails to recognize that EPISD's authority to file a complaint against the McIntyres is limited by Education Code section 25.0951 to violations of section 25.093 and, now repealed, section 25.094. The McIntyres' requested declaration would require the trial court to find that EPISD's mandatory prosecution policy was unlawful because it exceeded EPISD's authority under section 25.0951.[13] Thus, the McIntyres' challenge to the prosecution policy relies on a claim that the McIntyres are aggrieved by the school board's violation of the school laws of the state.

The Court contends that the McIntyres are not aggrieved by a violation of the school laws of the state because the McIntyres allege that EPISD violated their rights under the Texas Constitution, giving due process as an example. 499 S.W.3d at 826. However, those allegations are rooted in the McIntyres' claim that EPISD exceeded its authority, and EPISD's authority to act comes from the school laws, not from the Texas Constitution. The Texas Constitution provides the Legislature with the power to set up a system of public schools. TEX. CONST. art. VII, § 1 ("[I]t shall be the duty of the Legislature of the State to establish and make suitable provision for the support and maintenance of an efficient system of public free schools."). Therefore, it is from the Legislature and the laws passed by the Legislature, i.e., the Education Code, that school districts derive their authority to act. The McIntyres' allegation that EPISD exceeded its authority by enacting its mandatory prosecution policy is thus an allegation that EPISD violated the school laws.

The Court also contends the McIntyres assert that the Texas Constitution limits Mendoza's and EPISD's authority, and so the McIntyres are not aggrieved by the school laws, but by Mendoza's and EPISD's actions that allegedly violated the Texas Constitution. 499 S.W.3d at 828. However, while the McIntyres do allege that Mendoza and EPISD violated their equal protection, due process, and privacy rights under the Texas Constitution, it is because Mendoza and EPISD allegedly acted outside of their authority under the Education Code that the McIntyres' constitutional rights were allegedly violated. The McIntyres' constitutional claims and request for declaratory judgment are dependent on findings that EPISD lacks the authority under the Education Code, as interpreted by *Leeper*, 893 S.W.2d at 443–44, to inquire into a homeschool family's curriculum and that Mendoza and EPISD, therefore, acted outside of their authority under the Education Code. *See Peavy*, 37 S.W. at 319 (holding that a parent is aggrieved when her rights as a parent are infringed by actions taken under or in violation of a statutory scheme).

The Court suggests that section 7.057(a)(1) is implicated only when a plaintiff challenges a statute or an agency's rule

**13.** According to the version of section 25.0951 in effect at the time the complaints were filed, "[a] court shall dismiss a complaint or referral made by a school district under this section that is not made in compliance with this section." Act of May 30, 2005, 79th Leg., R.S., ch. 949, § 37, 2005 Tex. Gen. Laws 3198, 3211–12 (amended 2015) (current version at TEX. EDUC. CODE § 25.0951(c)). The current version of section 25.0951(c) states: "A court shall dismiss a complaint made by a school district ... that: (1) does not comply with this section; (2) does not allege the elements required for the offense; (3) is not timely filed ... ; or (4) is otherwise substantially defective." TEX. EDUC. CODE § 25.0951(c).

directly, and that the exhaustion requirement does not apply when a plaintiff challenges a school district's actions pursuant to its authority under the school laws of the state. As we recently recognized in *Clint ISD*, "[f]or well over one hundred years, we have held that persons complaining about the 'management of the school system' or the 'administration of school laws' must exhaust their administrative remedies before courts can exercise jurisdiction." 487 S.W.3d at 546. As far back as 1892, this Court recognized that "the authority of the courts to interfere with the management of the school system, at the instance of citizens or school officials, does not ordinarily exist" and should be "exercised with great caution, and in cases of imperative emergency." *Nance v. Johnson*, 84 Tex. 401, 19 S.W. 559, 559–60 (1892) (internal quotations omitted) ("[W]hen ... the wrongs complained of are alleged to have been committed by subordinate officers, and when no effort is shown to correct or redress them [through administrative processes], a manifest and urgent necessity to protect legal rights clearly violated, and to prevent irreparable injury, can alone warrant judicial interference."). Relying on that authority, courts have long recognized the importance of the administrative process in resolving disputes that arise from the administration of the school laws or management of the school system. *See, e.g., Huntington Indep. Sch. Dist. v. Scroggins*, 9 S.W.2d 171, 172 (Tex.Civ.App.–Beaumont 1928, no writ) (holding that a teacher had no right to take her case against the school district to the courts because the Legislature intended to place educational affairs under the jurisdiction of the department of education, and those aggrieved by the actions of school officials, "on any matter committed to them by statute," must first exhaust administrative remedies before seeking redress in the trial court); *Johnson v. City*

*of Dall.*, 291 S.W. 972, 972–73 (Tex.Civ. App.–Dallas 1927, writ dism'd w.o.j.) ("[O]ur appellate courts have uniformly held that the Legislature intended to and did place the educational affairs of the state under the jurisdiction of the department of education, and provided specifically for appeals from the rulings and decisions of subordinate school officers to the superintendent of public instruction, and from the ruling of this official to the state board of education. As primary jurisdiction to revise the action of subordinate school officials is lodged with the department of education, it will be conclusively presumed that the department, acting within the scope of its jurisdiction, will correctly and faithfully discharge its duties, and those aggrieved by the action of subordinate officials, on any matter committed to them by the statute, must exhaust these remedies before appealing to the courts for redress."); *Donna Indep. Sch. Dist. v. First State Bank*, 227 S.W. 974, 975 (Tex.Civ.App.–San Antonio 1921, no writ) ("[I]t has been uniformly held by the courts of Texas that an appeal to and decision by the State Superintendent is absolutely essential to give a court the authority to pass upon the question. It seems to be the fixed policy of the Legislature to create an educational system of public free schools that is sufficient unto itself and free as far as practical from any interference by the judiciary. The courts fully recognize the desire of the legislative branch of the state government and uniformly hold that the remedies provided for before school authorities must be exhausted before the courts will interfere."). While the Education Code's exhaustion requirement applies only to the types of claims that section 7.057(a) describes, *see Clint ISD*, 487 S.W.3d at 546, interpreting section 7.057(a)(1) to exclude claims based on a school district's *administration* of school laws runs counter to more than a

century of jurisprudence. Even the Texas Education Agency's own rules require a petition for a hearing before the Commissioner to describe the "challenged ruling, *action,* or failure to act." 19 TEX. ADMIN. CODE § 157.1073(c)(1) (emphasis added). I would construe section 7.057(a)(1) to require exhaustion of administrative remedies when a plaintiff's claim requires a determination of a school district's authority in administering the school laws.

In concluding that the McIntyres were aggrieved by Mendoza's and EPISD's actions as opposed to the school laws, the Court uses hypotheticals based on violations of the First and Fourth Amendments of the United States Constitution. 499 S.W.3d at 822. The Court's examples, however, are distinguishable from this case. In its first example, the Court posits that when a student alleges an unreasonable search by a school security officer, she is not aggrieved by the school district's authority to hire the security officer, but by the officer's unreasonable search. *Id.* at 828. I do not disagree with that analysis, but that scenario is irrelevant to the case here. In this case, the source of the McIntyres' grievances is EPISD's use of its authority under the Education Code to investigate and prosecute parents and students who do not comply with section 25.085(a)(1)'s compulsory attendance requirement. EPISD has allegedly injured the McIntyres through the means or instrumentality of its authority under the school laws, making the McIntyres subject to the exhaustion requirements under section 7.057(a).

The Court next posits that when a school suppresses speech or engages in viewpoint discrimination, the student is aggrieved by the school district's decision violating the First Amendment, not by the school district's authority to maintain order under the Education Code. 499 S.W.3d

at 824–25. Once again, I do not disagree with the Court's conclusion, but I disagree that the example applies here. As the Court notes, the First Amendment prohibits schools from suppressing speech when the speech would not "materially and substantially interfere" with maintaining order at school. *Tinker v. Des Moines Indep. Cmty. Sch. Dist.,* 393 U.S. 503, 509, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). However, the First Amendment does not limit the school district's authority to silence speech that does "materially and substantially interfere" with maintaining order under the school district's authority pursuant to the Education Code. *See Morse v. Frederick,* 551 U.S. 393, 397, 127 S.Ct. 2618, 168 L.Ed.2d 290 (2007) ("[S]chools may take steps to safeguard those entrusted to their care from speech that can reasonably be regarded as encouraging illegal drug use."). Regardless, in a First Amendment case, the student is not challenging the school district's authority to maintain order under the Education Code, but the school district's violation of the First Amendment by restricting speech.

The Court could give countless hypotheticals similar to the ones given, but it does not change the facts of this case. Here, the McIntyres are directly challenging EPISD's authority under the Education Code to file complaints against them alleging violations of Education Code sections 25.093 and 25.094 based on lack of homeschool verification and EPISD's authority to request such verification. There is no question in this case about whether a school district has authority to illegally search a student, unlawfully seize and search parents, or any other far-fetched scenario. Unlike the unrealistic and hyperbolic examples given by the Court, the true nature of the McIntyres' claims revolves around the question of what a school district has authority to do under

**842**

the Education Code to determine compliance with our decision in *Leeper*.

Even construed in the light most favorable to the McIntyres, the petition as a whole clearly reflects that the core issue in this case is whether a school district, in carrying out its duties under section 11.002, can demand homeschool verification and bring charges for violation of the Education Code if the parent fails to provide such verification. *See* TEX. EDUC. CODE § 11.002. In fact, in their brief to this Court, the McIntyres state that the issue presented in the case is "the District's legal authority to demand use of a particular curriculum." The McIntyres, in their pleadings to the trial court, have twice declared that "the object [of the case] has been, and is, a declaration ... [and] injunction, to *interpret/enforce state law* as applied to [EPISD's] policy/custom of dealing with home educated students and/or how [the McIntyres] were dealt with."

As this Court has stated time and time again, the purpose of the requirement to exhaust administrative remedies is to ensure that " 'the appropriate body adjudicates the dispute' first." *Clint ISD*, 487 S.W.3d at 544 (quoting *Essenburg v. Dall. Cty.*, 988 S.W.2d 188, 189 (Tex.1998) (per curiam)). The McIntyres should not be allowed to avoid the exhaustion requirement by alleging "constitutional misdeeds." *Jones*, 46 S.W.3d at 474 (noting that allowing avoidance of the exhaustion requirement "by the simple allegation of constitutional misdeeds" would "likely corrupt the entire process"). However, that is exactly what the Court is allowing the McIntyres to do here. I cannot agree and, therefore, cannot join the Court.

It is clear that the McIntyres' claims arise out of their alleged injury caused by EPISD's direct application of the school laws or by EPISD's alleged violation of the

school laws. The school district and the Commissioner of Education are better situated than the court to resolve the McIntyres' grievances. After exhausting administrative remedies, the McIntyres would then have the opportunity to "file suit and have the courts review the agency's decision." *Clint ISD*, 487 S.W.3d at 544. The McIntyres are persons "aggrieved by ... the school laws of this state" or a school board's actions that violate the school laws of the state under section 7.057(a) and must, therefore, exhaust administrative remedies. TEX. EDUC. CODE § 7.057(a).

### III. Conclusion

The Court holds that a party can circumvent the Legislature's exhaustion-of-administrative-remedies requirement through creative pleading. Because the Court's interpretation of section 7.057(a)(1) effectively nullifies that provision, contrary to the intent of the Legislature, and because the Court ignores the true nature of the McIntyres' claims, I respectfully dissent.